## OLP *et al. v.* LEDDICK *et al.*

*(Supreme Court, General Term, Fifth Department. April 16, 1891.)*

1. INJUNCTION AGAINST OVERSEERS OF POOR—VIOLATION OF EXCISE LAW.
   Laws N. Y. 1881, c. 531, § 1, as amended by Laws 1887, c. 673, providing for actions by tax-payers against officers of a municipal corporation "to prevent waste or injury to, or to restore and make good, any property, funds, or estate" of such corporation, does not authorize an action to restrain overseers of the poor from settling actions brought by them for penalties for violation of the excise laws of the state; as an action for such a penalty does not proceed on the ground of an indebtedness existing by contract, but on the ground of the party's guilt of an offense, and is prosecuted solely for the purpose of punishing the violator of the law.

2. OVERSEERS OF POOR—POWERS—SETTLEMENT OF QUI TAM ACTION.
   A settlement by an overseer of the poor of an action brought by himself or his predecessor, for penalties for violation of the excise laws, when honestly made in furtherance of general public opinion, and upon terms fair and reasonable, is within the powers of the overseer, and will not be interfered with by a court of equity.

Appeal from special term, Livingston county.

Action by Joseph P. Olp and others against William H. Leddick and another, overseers of the poor of the town of Mt. Morris, and Maurice Cassidy. Plaintiffs appeal from a judgment for defendants entered on the dismissal of the complaint on trial by the court without a jury. Laws N. Y. 1881, c. 531, § 1, as amended by Laws N. Y. 1887, c. 673, provides: "All officers, agents, commissioners, and other persons acting, or who have acted, for or on behalf of any county, town, village, or municipal corporation in this state, and each and every one of them, may be prosecuted, and an action or actions may be maintained against them, to prevent any illegal official act on the part of any such officers, agents, commissioners, or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds, or estate of such county, town, village, or municipal corporation, by any person whose assessment, or by any number of persons jointly the sum of whose assessments, shall amount to one thousand dollars, and who shall be liable to pay taxes upon such assessment or assessments in the county, town, village, or municipal corporation, to prevent the waste or injury of whose property the action

is brought, or who have been assessed or paid taxes therein upon any assessment or assessments of the above-named amount within one year previous to the commencement of any such action or actions."

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

W. Martin Jones, for appellants.  Charles J. Bissell and E. A. Nash, for respondents.

MACOMBER, J.  The plaintiffs bring this action under chapter 531 of the Laws of 1881, as amended by chapter 673 of the Laws of 1887, commonly spoken of as the "Tax-Payers' Act," for the purpose of restraining the settlement by the defendants Leddick and Kelsall, who are overseers of the poor of the town of Mt. Morris, of certain actions pending against the defendant Cassidy and others, to recover penalties in actions brought for violation of the excise laws of the state.  From May 3, 1887, to the 15th day of March, 1888, the defendant Cassidy was a bar-tender in a saloon in the village of Mt. Morris, and while there sold intoxicating liquors at retail without a license, either in his own name or the name of his employer, in quantities of less than five gallons at a time.  The defendant Leddick, and his co-overseer at that time, one William Narragan, had been requested by one of the plaintiffs to bring an action against Cassidy for the penalties incurred by him in such illegal sale of intoxicating liquors.  Accordingly such overseer did commence an action in the supreme court against Cassidy for such cause or causes of action, the complaint containing 100 separate counts or causes of action, and in which a judgment for $5,000 was demanded.  Subsequently, one John Olp having been associated with Leddick as a co-overseer of the poor, negotiations were had by which the defendant Leddick entered into an agreement with Cassidy, without the concurrence or consent of his associate, except that Olp had notice of an intention and an attempt to settle, which negotiations resulted in a settlement for the sum of $50 penalty and $100 costs, the terms of which were fully complied with by the defendant in that action, he having paid over the money and the costs to Leddick.  Leddick's co-overseer of the poor, John Olp, in no respect consented to or concurred in such settlement.  Other actions were pending by Leddick and Narragan, as such overseers, instituted in the supreme court, against sundry other parties, for like penalties.  Large expenses were incurred in the prosecution of these actions, the bills of which were presented to the board of supervisors of the county of Livingston at its annual session in the year 1888, for audit.  A strong public sentiment was created against the prosecution of these actions. On the 27th day of December, 1888, Leddick, in good faith, believing it to be for the best interests of the tax-payers in the town and county, made the settlement above mentioned, and at the same time settled the other actions against the persons named, except one, upon the same terms made with Cassidy.  It is abundantly shown that, while Cassidy was probably good for a larger amount than he actually paid, the defendants in the other actions were in many, if not most, instances, irresponsible.  But Leddick insisted that all of the actions, with the exception named, should be settled, and the money paid in behalf of the irresponsible defendants, as well as in behalf of Cassidy.

Upon hearing these facts, the learned trial judge dismissed the plaintiffs' complaint upon the merits, without putting the defendants to their proofs. In this conclusion we think he was clearly right, for two reasons:  The first is that the plaintiffs have no standing in court to maintain an action of this character.  The object of the tax-payers' act is to enable citizens to prevent waste or injury to the funds or estate of a municipality, and to make good and restore any property which may have been unlawfully taken.  It is for the purpose of preservation of the funds of the municipality that this act and its amendments were passed.  An actual or threatened injury or waste o

property or public funds enables the individual tax-payer to call upon a court of equity to interfere. *Ayers* v. *Lawrence*, 59 N. Y. 192. The case of *Standart* v. *Burtis*, 46 Hun, 82, upon which the appellants chiefly rely, has no aplication to the questions here considered. That was an action to restrain the fraudulent and unlawful settlement and satisfaction of a judgment which had been recovered against violators of the excise law, which judgment had been affirmed by the general term of the supreme court, and was pending on appeal in the court of appeals. A party charged in a judgment is charged under the highest form of a civil contract to pay. The case presented by *Standart* v. *Burtis* was one where there was shown to be an abuse of the discretionary power lodged in the excise commissioners in settling, for a nominal sum, a substantial judgment of $2,000, which was good and collectible against the party, against whom a recovery had been had for selling liquors without a license. The distinction between the two cases is so obvious as hardly to require further comment. This action, however, is not within the scope of these statutes. It is not made to restore any funds that have been embezzled, diverted, or dissipated. It is not for the purpose of preventing the waste or illegal use of any such funds. Under chapter 109 of the Laws of 1878, being an amendment of the act of 1857 and other acts, the overseers of the poor of the town have a right to sue for and recover the penalties prescribed by the excise laws. These penal statutes were a part of the repressive laws of the state, designed to regulate, and to some extent restrain, the sale of intoxicating liquors. Those parts of such laws which gave a right of action for a penalty do not proceed upon the ground of any actual indebtedness existing by contract from the person who has been guilty of an infraction of the law, but, on the contrary, on the ground of the party's guilt of an offense punishable both by criminal process and by the *quasi* criminal prosecution of an action for a penalty. In no legal sense can it be said that such a claim, made in behalf of the overseers of the poor of the town, is for the purpose of preventing waste. It is solely for the purpose of punishing the violator of the law. For this reason, we think, the plaintiffs have no standing in court to enable them to maintain this action.

But there is an additional ground upon which the decision of the learned justice at special term may be sustained, namely, that an overseer of the poor may settle and discontinue an action, whether brought by himself or his predecessors, when honestly made, as was done in this case. *Bellinger* v. *Birge*, 7 N. Y. Supp. 695, and 8 N. Y. Supp. 174; *People* v. *Leonard*, 74 N. Y. 443. The evidence and the findings show that the settlement of these actions was honestly made, in furtherance of a general public opinion, expressed through the board of supervisors and otherwise, and upon terms which were fair and reasonable. The allegations of the complaint, to the effect that the settlement against Cassidy was a conspiracy to defraud the people of the town of their just and lawful dues, and to work a waste and injuries to the funds, property, and estate of the town, are not supported by an item of proof in the case. The plaintiffs have failed to establish any fact which would justify a court of equity in interfering with the settlement so made by the overseers of the poor. The judgment appealed from should be affirmed, with costs to each respondent separately appearing. All concur.